[No. 2018]

## F. R. BYRAN, RESPONDENT, v. CITY OF SPARKS, APPELLANT.

1. LICENSES—MUNICIPAL ORDINANCES—RETAILER.

Under a city ordinance providing that "Every person engaged in the business of selling at retail, or any manner other than at a fixed place of business within the city, any goods, wares, or merchandise shall obtain a quarterly license and shall pay therefor $15 per quarter," a person owning a place of business outside the city limits where he manufactured and compounded certain articles used in the grocery trade, and, acting as his own salesman, solicited orders in the city and sold to restaurants, hotels, bakeries, and confectioners other kinds of groceries than manufactured and compounded by him, in both small and large quantities and in broken and unbroken packages, and filled orders given to him by such customers, is a retailer and liable for the license mentioned in the ordinance and is not exempt therefrom under the provisions of Rev. Laws, sec. 3879, exempting drummers and traveling salesmen representing a factory or store located in this state.

2. LICENSES—INTERSTATE COMMERCE—TRAVELING SALESMEN.

Drummers and traveling salesmen representing mercantile houses in other states are exempt from license within this state under the provisions of the federal constitution relative to interstate commerce, and the purpose of Rev. Laws, sec. 3879, was to place drummers and salesmen representing mercantile houses within the state upon the same equality.

3. LICENSES—RETAILER DEFINED.

A person who, in addition to other lines of business, purchases and sells groceries in small quantities and broken packages, differently from wholesalers, is a retailer, and is required to pay a license as such.

APPEAL from the Second Judicial District Court, Washoe County; T. F. Moran, Judge.

Action by F. R. Byran against the City of Sparks, to recover amount of license paid under protest. From a judgment for plaintiff, the City of Sparks appeals. **Reversed.**

The facts sufficiently appear in the opinion.

*W. L. Hacker*, City Attorney, and *Lewers & Henderson*, for Appellant.

*James Glinn*, for Respondent.

By the Court, TALBOT, C. J.:

Respondent brought this action to recover nine quarterly license payments made by him to the city of Sparks, which he alleges were made under protest. He obtained judgment in the district court, and from an order denying a motion for a new trial the city has appealed.

Respondent owned a place of business just outside the city of Sparks, and there manufactured and compounded spices, extracts, vinegar, and other articles used in the grocery trade. Also, acting as his own salesman, he solicited orders in Sparks, and bought and sold to restaurants, hotels, bakeries and confectioners other kinds of groceries, such as coffee, tea, rice, sugar, cheese, bacon, eggs and olive oil. These sales were made in small and large quantities, and in broken and unbroken packages, and it does not appear to be disputed that he filled any order given him by these customers, no matter how small the quantity.

During the time that he carried on the business and paid the license, the following ordinance was in force in the city of Sparks: "Every person, firm, association or corporation (other than itinerant vendors), engaged in the business or occupation of selling or disposing of at retail, for a commission or otherwise, or in any manner other than at a fixed place of business in the city of Sparks, any goods, wares, merchandise, jewelry, dry goods, meats, cigars, tobacco, fruit, vegetables or any products of the farm (except as hereinafter provided), shall first obtain a quarterly license from said city to carry on such business or occupation, and shall pay therefor fifteen dollars per quarter."

Before he began paying a license, he appeared before the city council and protested against being required to pay, claiming that he was exempt under the following provisions of the act of March 29, 1907:

"SECTION 1. On and after the first day of April, 1907, it shall be unlawful for any county, city or town to impose or collect any license or tax upon or from any drummer or traveling salesman employed by, and selling

the goods of, any manufacturer, compounder, wholesaler or jobber whose factory or store is located in Nevada.

"SEC. 2.    The provisions of section one of this act shall not apply to peddlers or hucksters." (Rev. Laws, 3879, 3880.)

It was the contention of respondent that he was the traveling salesman for himself, a "manufacturer, compounder, wholesaler and jobber." The city claimed that he was also a retailer, because he sold his goods direct to consumers, in broken packages, and that consequently he must pay the license.

Evidently the statute quoted was passed for the purpose of exempting from payment of license traveling salesmen employed by and selling the goods of manufacturers, compounders, wholesalers or jobbers having factories or stores in this state, so that they might be exempted in common with the traveling salesmen of manufacturers and wholesalers in other states who, as held at different times by this court and the Supreme Court of the United States, cannot be taxed by the state, owing to the provision of the federal constitution conferring upon Congress the regulation of interstate commerce. (*Ex Parte Rosenblatt*, 19 Nev. 439, 3 Am. St. Rep. 901; *Ex Parte Taylor and Rounds*, 35 Nev. 504; *Norfolk Ry. Co.* v. *Sims*, 191 U. S. 441, 24 Sup. Ct. 151, 48 L. Ed. 254; *State* v. *Bayer*, 34 Utah, 257, 97 Pac. 129, 19 L. R. A. n.s. 297.)

Conceding that the respondent was entitled to the exemption from the payment of the license which pertains to resident and nonresident manufacturers, compounders, wholesalers and jobbers, it is apparent that in addition to these lines of business, by purchasing groceries and selling them in small quantities and broken packages, differently from wholesalers, he acted as a retailer, and as such was required to pay the license, the same as other retailers.

In *McArthur* v. *Georgia*, 69 Ga. 446, the court said: "Bouvier defines the meaning of the word retail to be to sell in small parcels and not in gross. And it is so defined

by Worcester, Webster, and others who have given their time and study to the meaning of words. Under our law, words are to be given their usual and ordinary signification; to retail, then, is to sell in small quantities or parcels."

Other decisions adhere to this definition. (*Bridges* v. *State*, 37 Ark. 226; *Harris* v. *Council*, 28 Ala. 579; *Koenig* v. *State*, 33 Tex. Crim. 367.)

In *Campbell* v. *City*, 40 Kan. 654, 20 Pac. 493, the court said: "A 'merchant' is defined to be 'one who traffics or carries on trade; one who buys goods to sell again; one who is engaged in the purchase and sale of goods.' A 'retailer' is defined to be 'one who sells goods by small quantities or parcels.' 'Goods,' as used in this definition, include wares, commodities, and chattels. We have no doubt but that a lumber dealer is included in the ordinary signification of both a merchant and retailer."

In *Markle* v. *Akron*, 14 Ohio, 591, it is said: "But to retail, is to dispose of, in small quantities. * * *. It may be a distribution of a whole into parcels."

Cyc., vol. 34, p. 1685, defines retailer as: "One who sells goods by small quantities or parcels, one who deals in merchandise in smaller quantities than he buys, generally with a view to profit."

In *State* v. *Lowenhaught*, 11 Tenn. 15, the court said: "We take it, what is meant by retailing is selling by small quantities, to suit customers, articles which are bought in larger amounts generally. Now one who sells in this way, or whose business is so to sell, is a retail dealer; one who sells by the nature of his business in gross, and not by the small quantity or parcel to consumers, is a wholesaler dealer. While these definitions may not include all the elements in detail of either character of dealer, they go go far enough for the decision of this case."

In *State* v. *Hawkins*, 91 N. C. 626, the court said: "To retail means, generally, to sell by small quantities, in broken parts, in small lots or parcels, not in bulk. There is nothing in the statute that goes to show this term is

used in any restricted or limited sense, or that it does not imply any retailing, either rightful or wrongful."

In *Osborn* v. *Holmes*, 9 Pa. 333, defendant was engaged in the manufacture and sale of hats and caps, and also sold articles of domestic manufacture in an amount less than one thousand dollars per year. He was held to be liable for the payment of the license required for selling articles in an amount less than that sum.

As it would make no difference in the result of the action, it is unnecessary to determine whether, under the facts shown, the license was in law paid under protest, a question regarding which extended consideration has been given in the briefs.

The judgment of the district court is reversed.